UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

CASE NO. 04-CR-515(S-6)-01
_____

**UNITED STATES OF AMERICA,**

    *Plaintiff,*

vs.

**GEITHNERT THORP,**

    *Defendant.*
_____/

## DEFENDANT GEITHNERT THORP'S MEMORANDUM IN AID OF SENTENCING

COMES NOW the Defendant, GEITHNERT THORP, by and through his undersigned counsel and respectfully files this Memorandum in Aid of Sentencing in order to assist the court in fashioning an appropriate sentence in this case.

## I. STATEMENT OF FACTS

In 1995 Geithnert Thorp married Geraldine Escobar. It is this simple fact that has largely led to Mr. Thorp's predicament. The marriage led to the birth of four children. Shortly after the birth of the fourth child Mrs. Escobar announced that she was not interested in being a parent and abandoned her husband and children never

to be heard from again. The last Mr. Thorp heard was that his ex-wife was working as a prostitute in Spain. Mr. Thorp (along with the children) was forced to move in with his parents. His father, a retired stevedore, has had open heart surgery and is in poor health. Sadly, his mother is in even worse condition. She suffers from Huntington's Disease and is bedridden and slowly dying. Geithnert, desperate to improve the financial condition of his family, decided to come to the United States and seek employment. So in 2000 he came to New York and contacted the only people he knew there -- his wife's family. Initially, they offered him a job in a cleaning crew which he eagerly accepted. However, they eventually enlisted his aid in the real family business -- the importation of cocaine through the port in Staten Island. Over the course of 2002 and 2003 the Defendant participated in several importations of cocaine. That activity is correctly summarized in the pre-sentence investigation report.

  Eventually, Geithnert, who was fed up with his situation, took money from the organization and moved to Miami where he gave some of the money to his family there and sent the rest to Colombia to his father and children. It was in Miami where the Defendant was eventually arrested. As part of his plea Mr. Thorp disgorged all of his illegal earnings.

## II. MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §4A1.3

### A. INTRODUCTION

A sentencing court considering a departure makes two separate decisions: whether it has the power to depart and, if so, whether it should exercise that power. Here, we respectfully submit, this Honorable Court has the power to depart and should exercise such power under the particular circumstances applicable to this Defendant.

It is respectfully submitted that imposition of a sentence upon Mr. Thorp based on a criminal history category I is an authorized and permissible downward departure, from the otherwise applicable guideline range, in which this Court may engage.

The basis for departure in this case appears at, and is expressly authorized by U.S.S.G. §4A1.3 (b)(1), which provides:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

The commentary to this section also provides:

> This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur... This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the... likelihood of recidivism, and provides guidance for the consideration of such departures.

U.S.S.G. § 4A1.3, comment. (backg'd.). See also U.S.S.G. Chapter Four, Part A, Introductory Commentary ("To protect the public from further crimes, the likelihood of recidivism and future criminal behavior must be considered.").

Here, the pre-sentence investigation report provides for a criminal history category II for the Defendant. This is based on a single prior conviction of a misdemeanor count of marijuana possession for which no sentence of imprisonment was imposed (the defendant was sentenced to six months conditional discharge). It is the Defendant's contention that the criminal history category overstates and over-represents his criminal history and other circumstances demonstrate that the likelihood that he will commit other crimes is nil.

## B. PROPOSED DEPARTURE PURSUANT TO U.S.S.G. §4A1.3

The Defendant's current criminal history category is II. This is based on a single prior conviction. The probation department has correctly assessed one criminal history point for the conviction which would still result in a criminal history category of I. However, two additional criminal history points were also assessed because the defendant was sentenced to six months conditional discharge and the instant crime occurred during the course of the period of conditional discharge. Several factors should be noted as to this conviction. First, the crime concerned the possession of two small marijuana cigarettes. Second, that crime was completely unrelated to the instant

4

offense. Third, this misdemeanor did not involve any injury to any third persons and did not involve any violence. The current criminal history calculation results in an increase of thirty (30) months of the defendant's otherwise applicable guideline range.

As noted above, U.S.S.G. §4A1.3 permits a Court to depart from the otherwise applicable criminal history if it believes that the criminal history "over-represents the seriousness of the defendant's criminal history." If minor offenses "exaggerate" a defendant's criminal history score, a downward departure may be appropriate. *U.S. v. Summers,* 893 F.2d 63, 67 (4th Cir., 1990)

A district court has found that a downward departure was appropriate where the defendant's criminal history category as calculated in the presentence report significantly over-represented the seriousness of the defendant's actual criminal history and placed him in a category befitting less serious transgressors. *U.S. v. Nichols,* 740 F. Supp. 1332 (N.D.Ill. 1990); *affirmed* 937 F.2d 1257, *cert. denied* 112 S.Ct. 989, 117 L.Ed.2d 151, *affirmed* 28 F.3d 1216.

In *U.S. v. Miranda,* 979 F.Supp. 1040 (D.N.J. 1997) the Defendant pled to a narcotics charge. The Defendant had a prior conviction for D.U.I., a conviction for driving without a license and a second conviction for D.U.I. In addition, he had received an adjustment for committing the instant offense while on probation for the

second D.U.I. His resulting criminal history category was III. In granting the downward departure to Category I the court held as follows:

> Miranda's situation fits into the category of cases embraced by the Policy, which, is the authoritative guide for the application of section 4A1.3. *See, e.g., United States v. Hickman,* 991 F.2d 1110, 1113 n. 7 (3d Cir.1993). While driving under the influence of alcohol is a serious offense with potentially serious consequences, the Court finds that Miranda's 1988 DUI conviction is remote enough in time from the instant offense and sufficiently distinct in seriousness and kind from the instant offense, such that it should not be included in calculating Miranda's criminal history category. Similarly, Miranda's driving without a license conviction, a non-serious offense, which occurred approximately four years prior to the instant offense, is remote enough in time and sufficiently distinct in seriousness and kind from that the instant offense, such that it should also be excluded in calculating Miranda's criminal history category. *See, e.g., United States v. Valencia-Andrade,* 72 F.3d 770 (9th Cir.1995) (finding that driving with suspended license resulted in over-statement of criminal history); *United States v. Shoupe,* 988 F.2d 440, 446-47 (3d Cir.1993) adopting approach of *United States v. Pinckney,* 938 F.2d 519 (4th Cir.1991); *United States v. Summers,* 893 F.2d 63 (4th Cir.1990).
>
> Moreover, the Court believes that the inclusion of Miranda's 1994 DUI conviction, although committed while on parole, should not be included in calculating the criminal history category. Additionally, at oral argument, the Government conceded, and the Court agrees, that a criminal history category of I was not inappropriate.
>
> Accordingly, in calculating the sentence applicable to Miranda, the Court will subtract 5 points from his previous point total of 5, for a total of zero criminal history points, *see Hickman,* 991 F.2d at 1114 (noting that court should move "horizontally," use guideline range for a defendant with a higher or lower criminal history category, as applicable); *United States v. Taylor,* 843 F.Supp. 38, 48 (E.D.Pa.1993), and therefore, the Court will use a criminal history category of I in imposing sentence.

6

In *U.S. v. Anderson,* 955 F.Supp. 935 (N.D.Ill. 1997) the Defendant pled to two bank robberies. The defendant had a prior conviction for D.U.I. and for domestic battery. The defendant also received the increase for committing the offense while on probation which resulted in a criminal history category of III. In granting a one category reduction the court held as follows:

> The court finds that placing Anderson in Criminal History Category III significantly over-represents the seriousness of his DUI and domestic battery convictions. Although both DUI and domestic battery are serious offenses, they are not as serious as many of the crimes that place other defendants in Category III. While driving under the influence cannot be condoned, Anderson's DUI conviction did not involve any injury to people or damage to property. And while the seriousness of Anderson's domestic violence conviction cannot be minimized, it is significant that his wife was not hospitalized and apparently did not sustain permanent injury. Taking all of the relevant factors into consideration, and comparing Anderson's criminal history to that of other defendants who have been sentenced by this court over the years, the court concludes that Criminal History Category III significantly over-represents the seriousness of Anderson's criminal history. He belongs in Criminal History Category II, not Category III. *See Abbott,* 30 F.3d at 72-73 (district court may depart downward where criminal history category overrepresents defendant's criminal history; *United States v. Baker,* 804 F.Supp. 19, 22 (N.D.Cal.1992) (reducing criminal history category *from III to I* for defendant with prior convictions for giving false information and grand theft auto, and two additional points for committing offense of conviction while on probation.))

Finally, in *U.S. v. Ward,* 908 F.Supp. 350 (E.D.VA. 1995) the defendant pled to a charge of distributing crack cocaine. The Defendant had two prior convictions for

7

D.U.I., one of which was nine and half years old. The Court granted the Defendant's motion for a downward departure to criminal history category I.

In the instant case a downward departure to Category I would more fairly reflect the Defendant's criminal history. Further, the likelihood of recidivism – or more precisely, the improbability of recidivism – justifies a departure in this case. We respectfully submit that this will be demonstrated by facts and circumstances that will be more fully presented to this Honorable Court, by both the Government and undersigned counsel, at the sentencing hearing.

### III. FACTORS THAT WARRANT A MITIGATION OF SENTENCE

There are several factors that undersigned counsel believes the Court should consider in mitigation of the Defendant's sentence consistent with 18 U.S.C. §3553(a). First, it should be noted that the defendant has received an increase for role in the offense. While under the guidelines this increase for role is appropriate as a result of the Defendant recruiting certain individuals for one of the importations it should also be noted that the Defendant did not have decision making authority in the organization and did not receive a share of the profits of the criminal activities of the organization. He clearly did not have the managerial or supervisory responsibilities of some of his similarly situated co-defendants. Second, the Court should note that the Defendant withdrew from the organization and desisted from any further criminal activity prior

to his arrest. Although this withdrawal from the conspiracy was not sufficient to rise to a legal defense to the charges herein the Court may certainly consider the fact the Defendant left the organization and moved away and did not continue in a life of crime. Third, the Court may consider the Defendant's immediate confession and willingness to plead guilty to the charges. Fourth, the Court should consider the Defendant's extraordinary acceptance of responsibility by his willingness to voluntarily disgorge the profits of his criminal activity. (It's believed that he is the only Defendant to have done so.) Fifth, the Court should consider the circumstances of the Defendant's involvement in the instant crime insofar as the fact that he was induced to participate by his ex-wife's family taking advantage of his desperate financial condition. Sixth, the Court should consider this Defendant's relationship with his children as the sole caretaker and parent. Finally, the Court should consider the Defendant's willingness to come forward and provide substantial assistance to the Government.

## **CONCLUSION**

It has been said that the first step toward rehabilitation is admitting one is wrong, together with affirmative steps to atone for one's transgression. From the moment he was first approached by law enforcement Geithnert owned up to his crime.

Thereafter, he has taken the necessary actions to atone for his mistakes. He is genuinely remorseful and ashamed of his transgression.

Respectfully submitted,

**ROJAS & OLIVA, P.A.**

By:    /s Ruben Oliva
       RUBEN OLIVA, ESQ.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28 day of October, 2008 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

Respectfully submitted,

**ROJAS & OLIVA, P.A.**
**Attorneys for the Defendant**
**Brickell Bayview Centre, Suite 1900**
**80 S.W. 8th Street**
**Miami, Florida 33130**
**Tel.: 305.373.6868**
**Fax: 305.373.6768**
**ruben@rojasoliva.com**

By:    /s Ruben Oliva
       RUBEN OLIVA, ESQ.
       F.B.N. 626074